

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-22-00026-CV

IN THE INTEREST OF P.F., A CHILD

On Appeal from the 108th Judicial District Court
Potter County, Texas,
Trial Court No. 94,715-E-FM, Honorable Carry A. Baker, Presiding

June 24, 2022

MEMORANDUM OPINION

Before QUINN, C.J., and PARKER and DOSS, JJ.

Appellant J.B. (Mother) appeals the trial court's final order terminating her parental rights to P.F.[1]  Appellee is the Texas Department of Family and Protective Services. Through one issue, Mother challenges the sufficiency of the evidence supporting the trial court's best-interest finding.  We find the evidence sufficient and affirm the judgment of the trial court.

---

[1] To protect P.F.'s privacy, we will refer to J.B. as "Mother," and to the child by initials.  *See* TEX. FAM. CODE ANN. § 109.002(d); TEX. R. APP. P. 9.8(b).  The parental rights of P.F.'s father, R.A., were terminated in the same proceeding.  By order of March 16, 2022, we severed and dismissed his attempted appeal.  *In re P.F.,* Nos. 07-22-00026-CV, 07-22-00076-CV, 2022 Tex. App. LEXIS 1791 (Tex. App.—Amarillo Mar. 16, 2022, no pet.) (per curiam order).

## Background

Although the final hearing conducted via Zoom was brief, it showed evidence of Mother's "extensive history" of abusing illegal drugs, including methamphetamine and marijuana, and alcohol abuse. According to the Department's "Family Plan," a document admitted into evidence without objection, Mother used methamphetamine throughout her pregnancy. P.F. received no prenatal care and tested positive for methamphetamine at birth. The child was placed in the hospital's neonatal intensive care unit due to difficulty breathing. According to the Family Plan, Mother had a "history" with the department dating back to April of 2013, and her other children have been removed.[2] Mother also has a criminal history dating back to 2016 for charges of assault and possession of a controlled substance; she is still on probation. The Plan observed that if Mother was sent to jail "again," the child could be left with no caretaker.

Department investigator Isamar Pinedo Tirado testified the Department became involved after Mother and P.F.'s positive drug tests. Tirado noted that a follow-up drug screen of Mother confirmed the initial positive results for consumption of methamphetamine. Tirado also testified of alleged domestic violence between Mother and Father and that Mother was afraid of Father. The Family Plan likewise noted the Department's concern "about previous violence and abuse towards [Mother's] other children[.]"

P.F. was removed from Mother while still at the hospital and placed with his maternal grandmother, where he remained through the final hearing. The Plan and

---

[2] According to Department investigator Isamar Pinedo Tirado, another of Mother's children had been removed from Mother's care in 2018 after testing positive for methamphetamine at birth. Tirado answered in the affirmative when asked whether the present case was consistent with Mother's history of drug use.

Department caseworker Julie Moore opined that the current placement provided a stable support system for the child and that the family expressed willingness to assist with childcare and other needs.

Regarding whether Mother complied with the Plan's conditions for possibly seeking a return of the child, Moore testified about her difficulties in verifying Mother's claims of compliance. For example, Moore could not confirm whether Mother maintained suitable housing because no one answered despite multiple attempts to reach Mother at home and by telephone. Further, despite Mother's claim of completing a "drug treatment" program, Moore was unable to confirm the same because Mother neither signed a release with the provider[3] nor provided documentary evidence. Mother also failed to appear for hair follicle drug testing near the final hearing date. Finally, the evidence shows that although Mother initially participated in supervised visitation with P.F., she missed several sessions as the hearing date approached.

On December 8, 2021, the trial court signed a final order terminating Mother's parental rights to P.F. after making findings under Texas Family Code section 161.001(b)(1), predicate grounds (D), (E), and (O), and finding that termination was in the child's best interest.[4] Mother's notice of appeal was filed January 10, 2022, with the deadline extended by Appellate Rule 26.3.[5]

---

[3] A similar problem prevented Moore from verifying Mother's claim that she had received mental health treatment and a prescription for psychotropic medication.

[4] *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(D), (E), (O) and (2).

[5] *See* TEX. R. APP. P. 26.3, 28.1(a),(b), 26.1(b), & 25.1.

**Analysis**

Via a single issue on appeal, Mother challenges the sufficiency of the evidence supporting the trial court's finding that termination of her parental rights to P.F. is in the child's best interest. There is a strong presumption that keeping a child with a parent is in the child's best interest. *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006). "The best-interest prong of the termination inquiry is child-centered and focuses on the child's well-being, safety, and development. *In re J.W.,* No. 19-1069, 2022 Tex. LEXIS 450, at *42 (Tex. May 27, 2022) (cleaned up). In other words, it is the best interest of the child, and not the parent, that drives the analysis. *In re A.C.B.,* 198 S.W.3d 294, 298 (Tex. App.—Amarillo 2006, no pet.).

The United States Constitution and section 161.001 of the Texas Family Code require that in cases involving potential involuntary termination of a parent's rights to her child, the Department is required to prove its case by clear and convincing evidence. *In re E.N.C.,* 384 S.W.3d 796, 802 (Tex. 2012); *In re J.F.C.,* 96 S.W.3d 256, 263 (Tex. 2002). The applicable standards for reviewing the evidence on appeal are discussed in our opinion in *In re A.M.*, No. 07-21-00052-CV, 2021 Tex. App. LEXIS 5447 (Tex. App.—Amarillo July 8, 2021, pet. denied) (mem. op.). The district court is the exclusive judge of the credibility of the witnesses and the weight to be given to testimony. *In re H.E.B.,* No. 07-17-00351-CV, 2018 Tex. App. LEXIS 885, at *5 (Tex. App.—Amarillo Jan. 31, 2018, pet. denied) (mem. op.).

When we assess the evidence regarding the trial court's best-interest determination, we may consider the factors itemized in *Holley v. Adams*, 544 S.W.2d 367,

4

371–72 (Tex.1976).[6] Although the *Holley* list "is by no means exhaustive, [it] does indicate a number of considerations which either have been or would appear to be pertinent." *Holley,* 544 S.W.2d at 372.[7] When a trial court's predicate ground findings are unchallenged, as here, they can lend support to the best-interest determination. *In re T.C.,* No. 07-18-00080-CV, 2018 Tex. App. LEXIS 6769, at *13 (Tex. App.—Amarillo Aug. 23, 2018, pet. denied) (mem. op.) (noting that a parent who opts to forgo a challenge to predicate ground findings tacitly concedes that sufficient evidence supports those findings). Moreover, the absence of evidence about some of the *Holley* factors does not necessarily defeat the trial court's best-interest finding, "particularly if the evidence [is] undisputed that the parental relationship endangered the safety of the child." *In re C.H.,* 89 S.W.3d 17, 27 (Tex. 2005). "A parent's drug use, inability to provide a stable home, and failure to comply with a family service plan support a finding that termination is in the best interest of the child." *In re M.R.,* 243 S.W.3d 807, 821 (Tex. App.—Fort Worth 2007, no pet.).

In the present case, the evidence is undisputed that Mother ingested methamphetamine throughout her pregnancy and that P.F. tested positive for the drug at birth. Mother's lengthy history of drug abuse had already resulted in other children being removed from her possession, including a similar instance in which another child tested positive for methamphetamine at birth. This evidence permits the strong inference that

---

[6] The *Holley* factors are: (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist these individuals to promote the best interest of the child; (6) the plans for the child by these individuals or by the agency seeking custody; (7) the stability of the home or proposed placement; (8) the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. *Holley,* 544 S.W.2d at 371–72.

[7] *See In re R.R.,* 209 S.W.3d at 116.

Mother knew the risks and consequences of her behavior but nevertheless continued to consume methamphetamine anyway.

Moreover, Mother's drug use resulted in a criminal history. Mother's claim to have successfully completed a program for drug treatment was frustrated by her failure to produce documentary evidence or to consent for the Department to obtain a record. She also failed to undergo drug testing as the hearing date neared. This evidence permitted the trial court to infer that Mother continued to use drugs. During this same period, Mother also missed numerous supervised visitation sessions with the child.

Meanwhile, the evidence showed P.F. was doing well in placement with his maternal grandmother. Mother offered no evidence that might have shed light on an otherwise vague verbal account of her employment, living situation, and mental health treatment. We conclude that legally and factually sufficient evidence supported the trial court's best-interest finding.

## Conclusion

Having found the evidence sufficiently support's the trial court's best-interest finding, we affirm its final order of termination.

Lawrence M. Doss
Justice

6